# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| JAMES DEAN EAKER, | ) |
|        Plaintiff, pro se, | ) **MEMORANDUM OPINION**<br>) **AND RECOMMENDATION** |
| v. | ) 1:07CV608 |
| OVERTURF, et al. | ) |
|        Defendants. | ) |

This matter is before the court on Defendants' Motion for Summary Judgment (docket no. 58). Plaintiff has responded in opposition to the motion, and the matter is ripe for disposition. Because the parties have not consented to the jurisdiction of the magistrate judge, the motion must be dealt with by way of recommendation. For the following reasons, it will be recommended that the court grant Defendants' Motion for Summary Judgment.

Statement of the Case

On August 14, 2007, Plaintiff filed this action against Defendants for allegedly violating Plaintiff's civil rights by using excessive force under 42 U.S.C. § 1983 (docket no. 2). Defendants filed their Answer on November 9, 2007, denying liability and offering various affirmative defenses (docket no. 15). On July 15, 2009, Defendants filed their Motion for Summary Judgment (docket no. 58). Plaintiff first filed a motion requesting the court to deny or stay Defendants' motion for summary

-1-

judgment on August 26, 2009 (docket no. 64). Then on September 10, 2009, Plaintiff filed a Declaration in Opposition of Summary Judgment (docket no. 65).

Statement of the Facts

Plaintiff alleges on August 22, 2004, Defendant Hall ordered Defendant Pressley to mace plaintiff with tear gas[1] often used to disperse multiple subjects. (Compl. ¶9). The reason for this mace order, Plaintiff alleges, was because Plaintiff refused to submit to being handcuffed after he had requested the newspaper. (*Id.*) Plaintiff further alleges that Defendants Pressley and Hall then placed Plaintiff in full restraints in a single cell for approximately four hours, and neither allowed Plaintiff to shower nor notified medical of the mace incident. (Compl. ¶12). Prior to bringing suit, Plaintiff's administrative grievance was denied for lack of merit. (Compl. ¶III).

Defendants acknowledge parts of the incident, and provide additional circumstances, some of which Plaintiff admits. Prior to requesting the newspaper, Plaintiff was knocking on his cell door to the point where Defendant Hatley ordered him to stop or he would be placed in full restraints. (Decl. in Opp'n to Summ. J. ¶¶5-6). Plaintiff continued to kick the cell door and repeatedly refused to submit to being handcuffed, which led to Defendant Pressley administering a single burst of OC pepper spray on Plaintiff. (Pressley Aff. ¶¶5-11; Overturf Aff. ¶¶5-6; Smith Aff. ¶¶6-11).

---

[1] In their Answer, Defendants admit that Plaintiff was sprayed with pepper spray, rather than "tear gas" as Plaintiff alleges. (Answer ¶ 9).

Even after the application of pepper spray, Plaintiff twice refused to be handcuffed until he was given the newspaper. (Decl. in Opp'n to Summ. J. ¶11).

According to the North Carolina Department of Correction, Division of Prison Policies and Procedures, force may be used to the extent reasonably necessary for proper correctional objectives such as self defense or to maintain or to regain control. (Pressley Aff., Ex. A at 3). The Policies and Procedures also note that pepper spray, or other techniques that reduce the likelihood of injury to staff and inmates, should be used as a first level of response. (*Id.*)

Standard of Review

Summary judgment is appropriate when there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Zahodnick v. Int'l Bus. Machs. Corp.*, 135 F.3d 911, 913 (4th Cir. 1997). The party seeking summary judgment bears the burden of initially coming forward and demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the non-moving party must then affirmatively demonstrate that there is a genuine issue of material fact which requires trial. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a fact finder to return a verdict for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Sylvia Dev. Corp. v. Calvert County, Md.*, 48 F.3d 810, 817 (4th Cir. 1995). Thus, the

moving party can bear his burden either by presenting affirmative evidence or by demonstrating that the non-moving party's evidence is insufficient to establish his claim. *Celotex*, 477 U.S. at 331 (Brennan, J., dissenting). When making the summary judgment determination, the court must view the evidence, and all justifiable inferences from the evidence, in the light most favorable to the non-moving party. *Zahodnick*, 135 F.3d at 913; *Halperin v. Abacus Tech. Corp.*, 128 F.3d 191, 196 (4th Cir. 1997).

Discussion

The Eighth Amendment prohibits the infliction of cruel and unusual punishment. U.S. Const. amend. VIII. In determining whether a prisoner's Eighth Amendment rights have been violated, courts must examine both whether the officials acted with a sufficiently culpable state of mind and whether the alleged wrongdoing was objectively harmful enough to establish a violation. *Hudson v. McMillian*, 503 U.S. 1, 8 (1992), *citing Wilson v. Seiter*, 501 U.S. 294 (1991). Thus, both an objective and subjective analysis is required to determine Eighth Amendment violations regarding excessive force.

Whether the alleged wrongdoing is objectively harmful enough to establish a violation will depend on the context of the wrongdoing and the contemporary standards of decency. *Hudson*, 503 U.S. at 8. This requires balancing "the force applied and the seriousness of the resulting injury against the need for the use of force and the context in which that need arose." (*Id.*) Furthermore, "*de minimis* uses

of physical force" are necessarily excluded from the Eighth Amendment's prohibition of cruel and unusual punishment, unless the use of force is "of a sort 'repugnant to the conscience of mankind.'" (*Id.* at 9–10) (quoting *Whitley v. Albers*, 475 U.S. 312, 327 (1986)). Accordingly, the application of pepper spray and restraints must be both a balanced response to the situation and not repugnant to the conscience.

Although the use of mace and chemical compounds such as pepper spray has been closely scrutinized in correctional facilities, they can be constitutionally used in small quantities to control a "recalcitrant inmate." *See Williams v. Benjamin*, 77 F.3d 756, 763 (1996) (holding that an officer's belief that an inmate was throwing waste liquids justified an initial application of mace). In agreement with the North Carolina Department of Correction, Division of Prison Policies and Procedures, the *Williams* court further noted "because a limited use of mace constitutes a relatively 'mild' response compared to other forms of force, the initial application of mace indicates a 'tempered' response by the prison officials." (*See id.*; Pressley Aff., Ex. A at 4). Similarly, a decision to impose even the most restrictive of restraints is not per se unconstitutional, and is often used as a next step when "verbal commands, show of force, and mace, are ineffective in controlling prisoners." *Williams*, 77 F.3d at 764. These authorities indicate that these methods can be used, and when administered properly, do not appear to offend the conscience.

In this case, Plaintiff admits that he was kicking the cell door in order to gain the attention of the guards and to retrieve a newspaper. After he was told to stop

or he would be restrained, he continued to kick the cell door and refused to submit to being handcuffed. Even accepting Plaintiff's contention that he was calmly trying to get the attention of the Defendants, Plaintiff was still continually creating both a disturbance and refusing to submit to orders to be handcuffed. This repeated disobedience to being handcuffed in itself is likely enough to consider Plaintiff a recalcitrant inmate. This disregard of orders, combined with the disturbance Plaintiff already created by repeatedly kicking his cell door, renders Defendant's use of a single shot of pepper spray justified as a tempered response to maintain order in the situation. Likewise, the application of restraints is not objectively harmful enough to establish a violation. Perhaps most indicative of Plaintiff's contentious attitude was that even after he was sprayed with pepper spray, he still refused to be handcuffed until he was given the newspaper. At this point, the application of pepper spray appeared to be ineffective in controlling the Plaintiff as he continued his refusal to submit to being handcuffed. This continued disobedience merited the subsequent application of restraints, the application of which Plaintiff was forewarned, and thus was a balanced response to the overall situation.

For the subjective analysis, courts must decide whether the force was applied in a "good-faith effort to maintain or restore discipline," or was it applied to "maliciously and sadistically cause harm." *Hudson*, 503 U.S. at 6-7. Here, the court may consider such factors as the need for application of force, the relationship between the need and actual force used, any efforts made to temper the severity

of the response, and the extent of injury. *Whitley*, 475 U.S. at 321. For a prisoner to satisfy the subjective requirement, he must first show that "the force used by the corrections officers 'inflicted unnecessary and wanton pain and suffering.'" *Id.* (quoting *Hudson*, 503 U.S. at 6).

> When evaluating evidence to determine whether it is legally sufficient to satisfy the subjective component, a court may allow an inmate's claim to go to the jury only if it concludes that the evidence, viewed in a light most favorable to the claimant, will support a reliable inference of wantonness in the infliction of pain.

*Stanley v. Hejirika*, 134 F.3d 629, 634 (4th Cir. 1998) (internal citations and quotations omitted).

The Defendants' actions in this case all resulted from Plaintiff's actions. Initially Plaintiff was warned that if he did not cease his disruptive behavior, he would be placed in restraints. Both the single burst of pepper spray and the later application of restraints were in response to Plaintiff's repeated disturbance and disobedience. Even accepting Plaintiff's contention that he was in excruciating pain for an extended period of time, he has not claimed that he actually told the Defendants of his condition. Indeed, by continuing to demand the newspaper and refusing to submit to being handcuffed after the application of pepper spray, the Defendants may have reasonably believed the Plaintiff was not in any pain at all. Therefore, because Defendants' actions appear to be in response to Plaintiff's conduct and because Plaintiff offers no reliable evidence that any of the actions of

-7-

the Defendants were done to inflict unnecessary and wanton pain and suffering, the subjective component of Plaintiff's excessive force claim has not been met.

For all these reasons, Plaintiff has failed to establish a claim for excessive force against Defendants.[2] Furthermore, since Plaintiff has not shown an underlying constitutional violation against the Defendants who allegedly mistreated him, there can be no claims against Defendants Smith or Bennett based on supervisor liability. Defendants, therefore, should be granted summary judgment as to Plaintiff's excessive force claim.

Conclusion

For the reasons stated herein, **IT IS RECOMMENDED** that the Motion for Summary Judgment by Defendants (docket no. 58) be **GRANTED.**

                                                      WALLACE W. DIXON
                                                     United States Magistrate Judge

Durham, NC
May 19, 2010

---

[2] Since the court finds no constitutional violations, the court need not address Defendants' additional argument that they are entitled to qualified immunity. *See Hope v. Pelzer*, 536 U.S. 730, 736 (2002) ("The threshold inquiry a court must undertake in a qualified immunity analysis is whether plaintiff's allegations, if true, establish a constitutional violation.").