IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
No. 07 CV 608

| | |
|---|---|
| JAMES DEAN EAKER ) | |
| ) | |
| Plaintiff, pro se ) | |
| ) | MEMORANDUM |
| v. ) | ORDER |
| ) | |
| OVERTURF, et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |

Tilley, Senior District Judge:

This matter is before the Court on Defendants' Motion for Summary Judgment [Doc. #58]. The Plaintiff, Mr. James Dean Eaker ("Mr. Eaker"), responded in opposition to the motion [Doc. ## 65-67] and, on May 19, 2010, a Memorandum Opinion and Recommendation (the "Recommendation") was filed recommending that the court grant Defendants' Motion for Summary Judgment. [Doc. # 69]. Mr. Eaker filed timely objections to the Recommendation [Doc. ## 71-75].

Pursuant to Federal Rule of Civil Procedure 72(b), when a party states proper objections to a Magistrate Judge's disposition of a case, the court must conduct a <u>de novo</u> review of the portions of the Magistrate Judge's recommendation to which objection has been made. FED. R. CIV. P. 72(b)(3);

see also Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005) (District court required to "make a de novo determination of those portions of the [magistrate judge's] report or specified proposed findings or recommendations to which objection is made."). Proper objections to the Magistrate Judge's Recommended Ruling were presented and the review has been conducted. The matter is now ripe for disposition. For reasons which follow, summary judgment is DENIED.

## **STATEMENT OF THE CASE**

On August 14, 2007, Mr. Eaker filed this action against Defendants for allegedly violating his civil rights by using excessive force under 42 U.S.C. § 1983 [Doc. # 2]. Defendants filed their Answer on November 9, 2007, denying liability and offering various affirmative defenses [Doc. # 15]. On July 15, 2009, Defendants filed their Motion for Summary Judgment [Doc. # 58]. Mr. Eaker first filed a motion requesting the court to deny or stay Defendants' motion for summary judgment on August 26, 2009 [Doc. # 64]. Then on September 10, 2009, Mr. Eaker filed a Declaration in Opposition of Summary Judgment [Doc. # 65].

## **FACTS**

There are a number of uncontested facts in the case. On August 15,

2004, Mr. Eaker was locked in a cell at Lanesboro Correctional Facility in Polkton, NC. Mr. Eaker was alone in the cell, having been placed in isolation as a result of a disciplinary infraction. At some point Mr. Eaker requested a newspaper from the correctional officers on duty. Several of the named Defendants were officers on duty at the Lanesboro facility on Mr. Eaker's cell block at that time: Jessica Overturf, who was a corrections officer; Jackie Pressley, who served as a correctional sergeant; Officer Hall, who was the officer in charge on the cell block at the time; and Officers Hatley and Lowe, two other corrections officers.

All parties agree that when the officers did not respond to Mr. Eaker's request for the newspaper, Mr. Eaker began to kick his cell door to get the guards' attention. The parties also do not dispute that Mr. Eaker was warned to stop kicking his cell door by one of the corrections officers (Hatley). The parties agree that Mr. Eaker later refused to put his hands behind his back and submit to restraints so that the officers could enter his cell until he was given a newspaper. The parties have substantial disagreement over the remaining relevant facts. Because the case is at the summary judgment phase, all contested issues of fact are resolved in favor of the non-moving party (<u>see infra</u> standard of review section). Therefore,

3

the remainder of the facts presented here are those asserted in Mr. Eaker's verified complaint and supporting affidavits, as well as his affidavits opposing summary judgment.

One of the corrections officers responded to Mr. Eaker's initial knocking on the cell door by threatening to put him in four-point restraints. In spite of the warning, Mr. Eaker continued to kick his cell to gain the attention of Defendant Hall, the officer in charge. Once Hall came over to his cell Eaker stopped and remained peaceably in his cell. Subsequently, when the group of correctional officers approached the cell, Hall told Mr. Eaker that they wanted him to submit so he could be handcuffed, in order for the officers to be able to enter the cell and place him in four-point restraints. Mr. Eaker admits that he refused to submit to being handcuffed at that point, but says he never cursed or became abusive. Upon Mr. Eaker's refusal to be handcuffed, Officer Hall ordered one of the other officers to administer a burst of tear gas from a large cannister, a kind normally used for crowd dispersal/control, through the food trap of Mr. Eaker's cell door.

Even after the administration of the tear gas, Mr. Eaker refused to submit to being handcuffed until he received the newspaper. At some point

after the gas was used, one of the officers gave Mr. Eaker the paper and he then submitted to being handcuffed. After handcuffing Mr. Eaker through the door, the officers entered the cell and placed him in the four-point restraints. Mr. Eaker was not offered medical attention or a decontamination shower to alleviate the effects of the tear gas at that time (as required by prison regulations), but was instead left for over four hours in the four-point restraints. During the time he was restrained Mr. Eaker experienced excruciating pain and discomfort due to the effects of the tear gas and the four-point restraints themselves. His complaints and requests for attention were ignored.

While the officers' version of events is different in several important respects, their version will not be discussed here since it is not pertinent to the determination of summary judgment.

## ANALYSIS

### I. Standard of Review

Summary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The facts and any inferences to be drawn from the facts must be viewed in the light most favorable to the non-moving

party, and the non-movant is entitled to have the credibility of his properly forecast evidence assumed, his version of all that is in dispute accepted, and all internal conflicts in it resolved favorably to him. Miller v. Leathers, 913 F.2d 1085, 1087 (4th Cir. 1990).

Given this well-established standard, the contested state of the relevant facts in the case, and the fact that both sides support their positions with affidavits (meaning that credibility is more of an issue at this phase than any legal determination), the Court adopts the uncontested facts in addition to the version of disputed events presented by Mr. Eaker and analyzes the legal sufficiency of his claims based only upon those facts.

## II. Eight Amendment Claim

Mr. Eaker is suing under 42 U.S.C. 1983, but his claim is based on a violation of the prohibition on cruel and unusual punishment guaranteed by the Eighth Amendment to the Constitution of the United States. U.S. CONST. amend. VIII. In the prison context, the Eighth Amendment prohibits not only excessive sentences, but also protects prison inmates from inhumane treatment during the course of their imprisonment. Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). Eighth Amendment excessive force claims require both a subjective and an objective component to be satisfied. Wilson

6

v. Seiter, 501 U.S. 294, 302 (1991). The precise requirements of the objective and subjective components "'var[y] according to the nature of the alleged constitutional violation.'" Williams, 77 F.3d at 761 (citing Hudson v. McMillian, 503 U.S. 1, 5 (1992)).

The subjective component involves an inquiry as to whether the prison official acted with a sufficiently culpable state of mind, while the objective component is determined by whether the deprivation suffered or injury inflicted on the inmate was sufficiently serious. Williams, 77 F.3d at 761. Prison officials are given a certain amount of discretion in decisions to use force. This is because they are frequently called upon to maintain order, quell disturbances, and act "in haste, under pressure . . . frequently without the luxury of a second chance." Whitley v. Albers, 475 U.S. 312, 320 (1986). Because of the need for such latitude, the subjective standard a plaintiff must meet in the excessive force context is relatively high. An inmate can prove the subjective component only by showing that officials "inflicted unnecessary and wanton pain and suffering." Whitley, 475 U.S. at 320; Miller, 913 F.2d at 1087. To determine whether the force applied was unnecessary and wanton, a court should consider "whether the force was applied in a good faith effort to maintain or restore discipline or maliciously

and sadistically for the very purpose of causing harm." Whitley, 475 U.S. at 320-21; Williams, 77 F.3d at 761.

The subjective component of the alleged harm forms the crux of this case.[1] In determining the subjective component of the Eighth Amendment violation the Supreme Court set out several factors that should be balanced: 1. the need for application of force; 2. the relationship between that need and the amount of force used; 3. the threat reasonably perceived by the responsible officials; and 4. any efforts made to temper the severity of a forceful response. Hudson, 503 U.S. at 7 (citing factors originally articulated in Whitley, 475 U.S. 312). Courts may also consider the nature and severity of the injury inflicted. Whitley, 475 U.S. at 321; Miller, 913 F.2d at 1087.

Turning to the specific type of force applied in this case, it has been held that mace can constitutionally be used in small amounts to "prevent riots and escapes" or to control a "recalcitrant inmate." Williams, 77 F.3d at 763. On the other hand, the Fourth Circuit has also held that "it is generally a violation of the Eighth Amendment for prison officials to use mace, tear

---

[1] Because the present matter stands at the summary judgment phase, the only relevant inquiry at this phase is whether, considering the evidence in the light most favorable to Mr. Eaker, his claim survives as a matter of law. The analysis is not focused on the ultimate success or failure of the Eighth Amendment claim on the merits. The objective element is also dealt with infra, but presents a relatively straightforward issue.

gas, *or other chemical agents in quantities greater than necessary or for the sole purpose of infliction of pain.*" Iko v. Shreve, 535 F.3d 225, 240 (4th Cir. 2008) (citing Williams, 77 F.3d at 763.) (emphasis in Williams). In Williams, the Fourth Circuit held as a matter of law that an initial application of mace, used to quell a disturbance in the inmate segregation unit[2] involving several prisoners, who were all throwing water and shouting through their cells' food service windows, was not a violation of the Eighth Amendment. Williams, 77. F.3d at 763. The present case is a close analog to Williams, except that it involves Mr. Eaker's statement that a large cannister of tear gas–as opposed to mace–was used in a single cell to subdue a single prisoner who was not throwing anything from his cell. Also, Mr. Eaker was not restrained for as long a duration as Mr. Williams.

Applying the Whitley criteria to this case, it appears there was a need for some initial application of force; but, given that the officers here, according to Mr. Eaker's affidavit, used a large cannister of tear gas in a confined area, there is a substantial question of material fact whether that amount of force was necessary to gain entry into the cell. Accepting Mr. Eaker's version, there is also a substantial question whether–once entry was

---

[2] While it is not completely clear from the record, it appears the unit in Williams was similar in all relevant respects to the one Mr. Eaker was in during the present incident.

accomplished–an extensive period of four point restraint or a decision not to afford an immediate decontamination shower (or its equivalent) amounted to force neither actually necessary nor reasonably perceivable as necessary by the defendants.  See Williams, 77 F.3d at 765 ("[T]he unnecessary infliction of continued pain throughout a prolonged time period clearly supports an inference that the guards were acting to punish, rather than to quell the disturbance"); U.S. v. Cobb, 905 F.2d 784, 789 (4th Cir. 1990) ("[P]unitive intent behind a defendant's use of force may be inferred when force is not reasonably related to a legitimate nonpunitive governmental objective").

In meeting the second part of the excessive force Eighth Amendment requirement, the objective component, a plaintiff need only demonstrate that the injury inflicted was not de minimus.  Hudson, 503 U.S. at 10; Williams, 77F.3d at 761.  The objective component, like the subjective component, is "contextual and responsive to contemporary standards of decency." Hudson, 503 U.S. at 8.  As noted above, the prison context necessarily allows wider latitude in the use of force than most circumstances.  An application of force that is objectively offensive in most contexts may be a necessary part of keeping order in prison and justified under the constitutional norms of the Eighth Amendment.  Even in prison, however,

and "[e]ven when a prisoner's conduct warrants some form of response, evolving norms of decency require prison officials to use techniques and procedures that are both humane and restrained." Slakan v. Porter, 737 F.2d 368, 372 (4th Cir. 1984).

In contrast to the subjective component, the objective component required for an inmate seeking to prove an excessive force claim has a relatively low standard. Williams, 77 F.3d at 761. This is because, in the excessive force context, society's expectations are different. In excessive force cases, the transgression of constitutional norms is largely determined by the intent, and not the outcome, associated with the application of force. If prison officials are determined to have maliciously and sadistically used force to cause harm (under the subjective part of the analysis), then courts have held that contemporary standards of decency are always violated, no matter what type of harm was inflicted in a given instance. Williams, 77 F.3d at 761. In such circumstances, there need not be a searching inquiry into the precise level of harm inflicted.

The de minimus rule obviates such an inquiry, and prevents the courts from having to determine what level of injury adequately quantifies an Eighth Amendment-worthy violation. "Otherwise," as the Supreme Court of the

United States has held, "the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury. Such a result would have been as unacceptable to the drafters of the Eighth Amendment as it is today." Hudson, 503 U.S. at 10; Williams, 77F.3d at 761.

That is why an injury of any significance, however lasting or prominent physically, satisfies the objective component. In this case, Mr. Eaker asserts that he was sprayed with tear gas, then manacled in four-point restraints and left for over four hours, suffering the effects of the gas during that time. While Mr. Eaker does not assert any lasting or permanent injury as a result, it is nonetheless clear as a matter of law that force used, according to his version of the facts, caused more than a de minimus injury.

## **CONCLUSION**

At this stage of the proceeding, Mr. Eaker has presented enough evidence to support both the subjective and the objective components of the Eighth Amendment claim. Summary judgment, therefore, is DENIED.

This the 28TH day of July, 2010

/s/ N. Carlton Tilley, Jr.
Senior United States District Judge